UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHINH VA LAI,<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN, GEO GROUP, INC. et al.,<br><br>        Respondents. | Case No. 2:26-cv-01434-MCS-SSC<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING AND PRELIMINARY INJUNCTION ORDER (ECF NO. 5)** |

Petitioner Khinh Va Lai brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed a motion for a temporary restraining order and preliminary injunction. (Mot., ECF No. 5.) The Court ordered briefing on the motion. (Order Setting Br. Schedule, ECF No. 8.) Respondents Warden, Geo Group, Inc., in their official capacity as the Facility Administrator of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Jaime Rios, in his official capacity as the Acting Field Office Director of the ICE Los Angeles Field Office; Todd M. Lyons, in his official capacity as the Acting Director of ICE; Kristi Noem, in her official capacity as the Secretary of the Department of Homeland Security ("DHS"); and Pam Bondi, in her official capacity as the Attorney General of the United States filed a brief indicating they "do not have an opposition argument to present." (Resp., ECF No. 10.) The Court

1

deems the motion appropriate for decision without oral argument and abrogates the hearing set for February 18, 2026. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I. BACKGROUND

According to the petition and application materials, Petitioner was born in Vietnam in 1968. (Vong Decl. ¶ 3, ECF No. 5-3.) In the wake of the Vietnam War, he and his mother fled the country and came to the United States. (*Id.*) In 1981, Petitioner became a lawful permanent resident when he was 13 years old. (*Id.*) When Petitioner was a teenager, he began exhibiting symptoms related to a then-undiagnosed mental illness. (*Id.* ¶ 5.) Throughout the late 1980s and into the 1990s, Petitioner was arrested numerous times and "had several psychiatric episodes that led to hospitalizations." (*Id.*) Eventually, in 1994, he was diagnosed with paranoid schizophrenia. (*Id.*) In April 2010, Petitioner was detained and charged with removability based on a 2000 burglary conviction under California Penal Code section 459. (2d Paik Decl. ¶ 4, ECF No. 5-2.) Petitioner was ordered removed to Vietnam based on that conviction. (*Id.*) After ICE was unable to effectuate his removal, Petitioner was released pursuant to an Order of Supervision and Terms of Release on November 24, 2010. (Paik Decl. Ex. 2, ECF No. 5-5.) Since his release in 2010, Petitioner abided by the terms of the Order of Supervision and regularly appeared at his scheduled ICE check-ins. (*See id.* Ex. 3, ECF No. 5-6; Vong Decl. ¶ 6.) He also focused on treating his schizophrenia and began receiving monthly injections that helped him maintain control over his symptoms. (Vong Decl. ¶ 7.) He has not had any arrests or run-ins with law enforcement since 2000. (*Id.*) He serves as his 76-year-old mother's caretaker and divides the costs of rent and basic necessities with her. (*Id.* ¶¶ 7, 12.) Without Petitioner's contribution, his mother would not be able to afford her rent and potentially would face homelessness. (*See id.* ¶ 12.)

///

When Petitioner appeared for a scheduled check-in with ICE on January 14, 2026, ICE detained him. (2d Paik Decl. ¶ 6.) An ICE officer provided Petitioner with a Notice of Revocation of Release but refused to provide a copy to Petitioner's attorney, who accompanied Petitioner to the check-in. (*Id.* ¶ 7.) When his attorney did get a chance to look at the document, the form "was largely blank and not even the country of removal was filled in." (*Id.*) The ICE officer did not provide a reason for the re-detention despite counsel asking for one. (*Id.*) Counsel informed the ICE officers of Petitioner's "critical need for ongoing mental health care and his needed injections." (*Id.* ¶ 8.) The officers represented that the Adelanto Processing Center had the medication Petitioner needed to treat his schizophrenia and that Petitioner would receive the medication while he was in custody. (*Id.*) Counsel provided ICE with "two large binders with hundreds of pages of Petitioner's medical history so that [the officers] could provide it to Adelanto." (*Id.*)

After several attempts to contact her client, (*see id.* ¶¶ 9–18), counsel was finally able to have a conversation with Petitioner over Zoom on February 6, (*id.* ¶ 19). She "observed a noticeable deterioration" in his mental health that made it clear to her that he "was not receiving proper treatment or medication," including his injections that treat his schizophrenia. (*Id.*) Petitioner reported that "he had been locked in a room by himself with his hands and legs restrained" and was not permitted to use the restroom. (*Id.*) Because of that, "[h]e was forced to urinate on himself and defecate in his bed." (*Id.*)

Petitioner claims that his detention violates the Due Process Clause of the Fifth Amendment, the Convention Against Torture, the Immigration and Nationality Act, and related regulations. (Pet. ¶¶ 66–91.) He seeks an order directing Respondents to immediately release him from custody, as well as enjoining Respondents from re-detaining him or removing him to a third country "absent required procedural protections." (Mot. 29; Proposed Order ¶¶ 1, 3–5, ECF No. 7.)

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

Petitioner is likely to succeed on the merits of his Fifth Amendment Procedural Due Process claim. (Mot. 19–22; Pet. ¶¶ 81–87.)[1] "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o

---

[1] The Court does not opine on Petitioner's likelihood of success on the merits of his other claims.

4

person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

First, the private interest that will be affected by the official

> action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

Respondents have conceded that, under *Mathews*, Petitioner should have been afforded a pre-deprivation hearing before a neutral adjudicator. (*See* Resp. 1 ("At this time, Respondents do not have an opposition argument to present.").) First, the unrebutted evidence indicates Petitioner has a substantial private interest in remaining free from ICE custody. ICE initial released him from custody pursuant to an Order of Supervision in 2010 after it was unable to effectuate his return to Vietnam, and Petitioner remained out of custody until his re-detention in 2026. (2d Paik Decl. Ex. 2; Vong Decl. ¶¶ 6–7.) The record indicates that Petitioner developed significant ties to the community during his time out of custody, including providing caretaking responsibilities for his 76-year-old mother. (Vong Decl. ¶ 7.) He helps his mother, who does not speak English, by guiding her on which bus to take, helping her use her cell phone, and communicating with others who speak English on her behalf. (*Id.*) He also helps his mother pay for rent and other basic necessities. (*Id.* ¶ 12.) Without Petitioner's contribution, his mother faces potential homelessness because she cannot afford to pay for rent on her own. (*Id.*) Due process thus protects Petitioner's substantial liberty

interest in remaining out of custody so that he can provide for his mother, just as he has for more than 15 years since ICE released him in 2010. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *26–27 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

Respondents have also conceded that there is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of wrongful deprivation is especially high here given evidence that Petitioner has complied with the terms of his Order of Supervision and has maintained required contacts with the federal government, including the one that precipitated his detention. (*See* 2d Paik Decl. Ex. 3; Vong Decl. ¶ 6.) He also is the primary caretaker for his 76-year-old mother. (Vong Decl. ¶ 7.) This unrebutted evidence tends to show that Petitioner does not pose a flight risk. Nor does the record tend to show that Petitioner was a danger to the community at the time of his arrest. While he was convicted of burglary in 2000, (2d Paik Decl. ¶ 4), he has had no criminal arrests or run-ins with law enforcement in the last 25 years, (Vong Decl. ¶ 7). Moreover, after his 2010 release from ICE custody, Petitioner began treating his schizophrenia with monthly injections to get his symptoms

1  under control. (*Id.*) The injections were "immensely helpful" and enabled Petitioner "to
2  live in peace." (*Id.*) This unrebutted evidence raises an inference that Respondents will
3  have difficulty proving that Petitioner's detention is necessary to prevent danger to
4  community or his flight. *Cf., e.g.*, *Pablo Sequen v. Albarran*, __ F. Supp. 3d __, No. 25-
5  cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025).

6  Respondents have also conceded that there are no meaningful countervailing
7  government interests that support detaining previously paroled noncitizens like
8  Petitioner without a pre-detention hearing. And indeed, many courts, including this one,
9  have regularly found there are no such countervailing interests. *See, e.g.*, *Martinez Cruz*
10 *v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6,
11 2025) (collecting cases) (Scarsi, J.); *Sira-Hurtado v. Hermosillo*, No. C25-2173-KKE,
12 2025 U.S. Dist. LEXIS 232795, at *11 (W.D. Wash. Nov. 26, 2025) (finding the
13 "Government's interest in re-detaining noncitizens such as Petitioner who were initially
14 released years ago without a hearing is minimal: any administrative or financial burdens
15 in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation
16 of the liberty interest at issue.").

17 In all, Respondents have conceded that Petitioner is likely to succeed on the
18 merits of his Fifth Amendment Procedural Due Process claim and, thus, should have
19 been provided a pre-deprivation hearing before a neutral adjudicator under *Mathews*.
20 Respondents have also conceded that Petitioner is suffering and will continue to suffer
21 irreparable harm through his continued detention and that the balance of equities and
22 public interest tip sharply in Petitioner's favor. Respondents have thus conceded that
23 Petitioner is entitled to preliminary injunctive relief.

24 The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c);
25 *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the
26 district court with discretion as to the amount of security required, *if any*." (internal
27 quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx),
28 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal

harms suffered by the government, the Court will not require a security.").

## IV. CONCLUSION

The Court grants the motion in substantial part. The Court issues a preliminary injunction as follows:

1. Respondents shall release Petitioner from detention forthwith.
2. Respondents shall return to Petitioner all property confiscated from him during his arrest and processing into detention, including but not limited to any personal identification, employment authorization document, medical insurance card, money, and documents he received upon entry and release into the United States.
3. Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing him a pre-detention hearing before a neutral adjudicator.

The Court declines to provide other relief requested in the application at this time. Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: February 17, 2026

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE